Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/30/2021 08:08 AM CDT

State of Nebraska, appellee, v. Natavian
Q. Morton, appellant.

___ N.W.2d ___

Filed March 23, 2021.    No. A-19-1168.

1. **Pleas: Appeal and Error.** A trial court is afforded discretion in deciding whether to accept guilty pleas, and an appellate court will reverse the trial court's determination only in the case of an abuse of discretion.

2. **Judges: Words and Phrases.** A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

3. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

4. **Effectiveness of Counsel: Appeal and Error.** Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law.

5. **____: ____.** In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.

6. **Convictions: Weapons: Intent.** Under Neb. Rev. Stat. § 28-1205 (Reissue 2016), when a felony which serves as the basis of the weapon charge is an unintentional crime, the accused cannot be convicted of the weapon charge.

7. **Pleas: Waiver.** The voluntary entry of a guilty plea or a plea of no contest waives every defense to a charge, whether the defense is procedural, statutory, or constitutional.

8. **Pleas.** A sufficient factual basis is a requirement for finding that a plea was entered into understandingly and voluntarily.

9. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.

10. **Sentences.** In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.

11. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

12. **Sentences: Probation and Parole: Appeal and Error.** Denial of probation and imposition of a sentence within statutorily prescribed limits will not be disturbed on appeal absent an abuse of discretion.

13. **Sentences: Statutes.** Neb. Rev. Stat. § 29-2260 (Reissue 2016) is a directive to the trial court as to certain factors to be considered in imposing the sentence, but § 29-2260 does not control the trial court's discretion in its conclusion reached as to the proper sentence to be imposed, after weighing the statutory factors.

14. **Sentences: Statutes: Appeal and Error.** An appellate court's review of an alleged abuse of the sentencing judge's discretion in refusing to withhold imprisonment under Neb. Rev. Stat. § 29-2260 (Reissue 2016) must recognize the statutory guidelines set out in § 29-2260 for the direction of the sentencing judge in imposing or withholding imprisonment, but the factors are not mathematically applied.

15. **Pleas: Waiver.** Generally, a voluntary guilty plea or plea of no contest waives all defenses to a criminal charge.

16. **Effectiveness of Counsel: Pleas.** When a defendant pleads guilty or no contest, he or she is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel.

17. **Effectiveness of Counsel: Records: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record.

18. **Effectiveness of Counsel: Proof.** Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466

U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

19. ____: ____. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.

20. **Effectiveness of Counsel: Pleas.** In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

21. **Convictions: Effectiveness of Counsel: Pleas: Proof.** When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty.

22. **Effectiveness of Counsel: Proof.** The two prongs of the ineffective assistance of counsel test under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), may be addressed in either order.

23. **Effectiveness of Counsel: Records: Appeal and Error.** The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question.

24. ____: ____: ____. The record on direct appeal is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy.

25. **Effectiveness of Counsel.** As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument.

Appeal from the District Court for Lancaster County: Lori A. Maret, Judge. Affirmed as modified.

Jonathan M. Braaten, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

Pirtle, Bishop, and Welch, Judges.

Pirtle, Judge.

## I. INTRODUCTION

Natavian Q. Morton appeals from his plea-based convictions and sentences in the district court for Lancaster County for one count of manslaughter and one count of possession of a firearm during the commission of a felony. He claims there was not a sufficient factual basis to support his no contest plea and conviction for the weapon charge, that the district court imposed excessive sentences, and that his trial counsel provided ineffective assistance. For the reasons that follow, we affirm Morton's convictions, but determine that Morton's sentence on count II, possession of a firearm during the commission of a felony, was an abuse of discretion. Accordingly, we reduce the sentence on count II.

## II. BACKGROUND

On May 31, 2018, the State charged Morton with second degree murder, a Class IB felony; unlawful discharge of a firearm, a Class ID felony; and two counts of use of a firearm to commit a felony, both Class IC felonies.

On July 22, 2019, pursuant to a plea agreement, the State amended the count of second degree murder to manslaughter and amended one of the counts of use of a firearm to commit a felony to possession of a firearm during the commission of a felony. The State dismissed the remaining counts. Morton agreed to plead no contest to the amended charges.

At the plea hearing, before accepting Morton's no contest pleas, the district court advised him that he was giving up certain constitutional rights by entering a plea, which included the right to confront witnesses against him, the right to a jury trial, and the right against self-incrimination. The court advised him of the charges against him and the range of penalties. The court advised Morton of the civil consequences of a felony conviction. Morton stated that he understood the rights he was giving up, as well as the charges against him. Morton indicated to the court that he had sufficient time to

discuss the case with his attorney prior to the hearing, that they had spoken about all possible defenses, and that he was satisfied with his attorney and felt his counsel had properly represented him.

The State provided a factual basis to support Morton's no contest pleas. In summary, the State would have provided evidence at trial that on March 26, 2018, Morton and several friends drove to a house in Lincoln, Nebraska, intending to continue a fight that had begun earlier that day. After they arrived, Morton and his friends exited their vehicles and stood in the front yard of the residence. At some point, someone handed Morton a gun. A verbal fight broke out between Morton's friends and individuals standing on the front porch. When a female from the residence got into a vehicle and began to drive around the yard in an attempt to run people over, Morton pulled the gun out of his pocket. He fired in the direction of the front porch where people were standing, and the victim was shot and subsequently died from his injuries. Morton was 16 years old at the time of the offense.

The district court found beyond a reasonable doubt that Morton understood the nature of the amended charges against him; that Morton's pleas were made freely, knowingly, intelligently, and voluntarily; and that there was a sufficient factual basis to support the pleas. The court accepted Morton's no contest pleas and found him guilty on both counts. The court ordered that a presentence investigation report (PSR) be prepared and scheduled sentencing.

On November 18, 2019, a sentencing hearing was held. Prior to imposing its sentence, the court stated it had reviewed the PSR, as well as letters written by counsel. In deciding upon the sentence, the court took into consideration Morton's young age at the time of the offense, Morton's lack of criminal history, the "extreme benefit" he received as part of the plea agreement, and the fact that someone had lost his life as a result of Morton's actions. The court sentenced Morton to 15

to 20 years' imprisonment on the conviction of manslaughter and 30 to 40 years' imprisonment on the conviction of possession of a firearm during the commission of a felony, and it ordered the sentences to be served consecutively. Morton was given 570 days' credit for time served.

## III. ASSIGNMENTS OF ERROR

Morton assigns, restated and consolidated, that there was insufficient evidence to sustain his conviction of possession of a firearm during the commission of a felony; that the district court imposed excessive sentences; and that his trial counsel was ineffective.

## IV. STANDARD OF REVIEW

[1,2] A trial court is afforded discretion in deciding whether to accept guilty pleas, and an appellate court will reverse the trial court's determination only in the case of an abuse of discretion. *State v. Ettleman*, 303 Neb. 581, 930 N.W.2d 538 (2019). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

[3] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019).

[4,5] Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Vanness*, 300 Neb. 159, 912 N.W.2d 736 (2018). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. Insufficient Factual Basis

[6] Morton first argues that the State's factual basis was insufficient to support his conviction of possession of a firearm during the commission of a felony. Specifically, he claims that there was no indication from the factual basis that the underlying felony involved was an intentional crime, because the court did not clarify during the plea hearing whether the predicate offense was "sudden quarrel" manslaughter or unintentional manslaughter. Brief for appellant at 8. In support, Morton cites to *State v. Pruett*, 263 Neb. 99, 638 N.W.2d 809 (2002), which held that when a felony which serves as the basis of the weapon charge is an unintentional crime, the accused cannot be convicted of the weapon charge.

In contrast, the State argues that the Nebraska Supreme Court's holding in *State v. Burkhardt*, 258 Neb. 1050, 607 N.W.2d 512 (2000), applies to this case. In *Burkhardt*, the defendant pled guilty to one count of manslaughter and one count of use of a firearm to commit a felony. On appeal, the defendant argued that his conviction for the weapon charge should be vacated because the predicate crime of manslaughter was unintentional. However, the court in *Burkhardt* concluded that by knowingly, intelligently, and voluntarily entering pleas of guilty, the defendant had waived any arguments related to the alleged defect. Therefore, the State in this case argues that even if the factual basis was insufficient to sustain Morton's conviction for possession of a firearm during the commission of a felony, he has waived the argument by failing to object to the factual basis at the plea hearing and entering his plea of no contest.

[7,8] It has been held that the voluntary entry of a guilty plea or a plea of no contest waives every defense to a charge, whether the defense is procedural, statutory, or constitutional. *State v. Manjikian, supra*. However, a sufficient factual basis is a requirement for finding that a plea was entered

into understandingly and voluntarily. *State v. Ettleman*, 303 Neb. 581, 930 N.W.2d 538 (2019); *State v. Wilkinson*, 293 Neb. 876, 881 N.W.2d 850 (2016). The court in *Wilkinson* made it clear that a defendant does not waive a challenge to the factual basis by entering a plea, because a sufficient factual basis is a prerequisite for a judicial finding that the plea was entered into understandingly and voluntarily. See, also, *State v. Clemens*, 300 Neb. 601, 915 N.W.2d 550 (2018); *State v. Schiesser*, 24 Neb. App. 407, 888 N.W.2d 736 (2016). Additionally, even though Morton did not object to the factual basis at the plea hearing, the issue was clearly before the district court, because the court was required to determine whether a sufficient factual basis existed prior to accepting Morton's pleas. See *State v. Workman*, 22 Neb. App. 223, 857 N.W.2d 349 (2014) (finding that trial court erred in accepting defendant's guilty pleas without factual basis and where issue was raised for first time on motion for rehearing before appellate court). Therefore, we determine that Morton has not waived the right to challenge the sufficiency of the State's factual basis on direct appeal. We next analyze whether the factual basis was sufficient.

Morton was convicted of possession of a deadly weapon (firearm) during the commission of a felony in violation of Neb. Rev. Stat. § 28-1205(2)(a) (Reissue 2016), which states: "Any person who possesses a firearm, a knife, brass or iron knuckles, or a destructive device during the commission of any felony which may be prosecuted in a court of this state commits the offense of possession of a deadly weapon during the commission of a felony." Possession of a deadly weapon, which is a firearm, during the commission of a felony is a Class II felony. § 28-1205(2)(c).

On appeal, Morton does not contest that he was in possession of a firearm, nor that he has been convicted of manslaughter, a Class IIA felony. Rather, he argues that under *State v. Pruett*, 263 Neb. 99, 638 N.W.2d 809 (2002), the underlying felony for a weapon charge must be an intentional crime, but because the State's factual basis supports that he committed

unintentional manslaughter only, it cannot sustain his conviction for possession of a firearm during the commission of a felony.

The rule that an unintentional crime cannot serve as the predicate felony for a weapon charge was first articulated by the Supreme Court in *State v. Ring*, 233 Neb. 720, 447 N.W.2d 908 (1989), *disapproved on other grounds, State v. Irish*, 292 Neb. 513, 873 N.W.2d 161 (2016). In *Ring*, the court explained that the purposes behind § 28-1205 are to discourage individuals from employing deadly weapons in order to facilitate or effectuate the commission of felonies and to discourage individuals from carrying deadly weapons while they commit felonies. The court then stated, "It cannot reasonably be said that § 28-1205 will dissuade a person from using a deadly weapon to commit an unintentional felony; the two concepts are logically inconsistent." *State v. Ring*, 233 Neb. at 724, 447 N.W.2d at 911. As a result, the court concluded that when the felony which served as the basis of the use of a weapon charge was an unintentional crime, the accused could not be convicted of use of a weapon to commit a felony. Subsequently, in *State v. Pruett, supra*, the court held that a manslaughter conviction for causing the death of another unintentionally while in the commission of an unlawful act was an unintentional crime and therefore could not serve as the predicate felony for a charge of use of a deadly weapon to commit a felony. See Neb. Rev. Stat. § 28-305(1) (Reissue 2016). See, also, *State v. Sepulveda*, 278 Neb. 972, 775 N.W.2d 40 (2009); *State v. Rye*, 14 Neb. App. 133, 705 N.W.2d 236 (2005).

We point out, however, that *State v. Ring, supra*; *State v. Pruett, supra*; *State v. Sepulveda, supra*; and *State v. Rye, supra*, are legally distinct from Morton's case. In each of those cases, the defendant was charged and convicted of *use* of a deadly weapon to commit a felony in violation of § 28-1205(1)(a). Morton was convicted with *possession* of a deadly weapon during the commission of a felony in violation of § 28-1205(2)(c). Section 28-1205(1)(a) states that "[a]ny person who uses a [deadly weapon] *to commit any felony*

which may be prosecuted in a court of this state commits the offense of use of a deadly weapon to commit a felony." (Emphasis supplied.) The Supreme Court in *Ring* held that the language "to commit any felony" in § 28-1205 is synonymous with "'for the purpose of'" committing any felony and not "'with the result of'" committing a felony. 233 Neb. at 723, 447 N.W.2d at 910. The court reasoned that a criminal defendant could use a weapon "'for the purpose of committing'" a felony only if the predicate offense was an intentional crime. *Id.* at 724, 447 N.W.2d at 911.

In contrast, § 28-1205(2)(a) states that "[a]ny person who possesses a [deadly weapon] during the commission of a felony which may be prosecuted in a court of this state commits the offense of possession of a deadly weapon during the commission of a felony." Completely absent is the "to commit any felony" language that was the linchpin of the Supreme Court's analysis in *State v. Ring*, 233 Neb. 720, 447 N.W.2d 908 (1989), *disapproved on other grounds, State v. Irish*, 233 Neb. 720, 447 N.W.2d 908 (1989), and subsequent cases. On appeal, Morton does not cite to—nor do we locate—Nebraska precedent that explicitly applies the holdings from *State v. Ring, supra*, and *State v. Pruett*, 263 Neb. 99, 638 N.W.2d 809 (2002), in a case where a defendant was convicted of a "possession" weapon charge rather than a "use" weapon charge. It is true that in *Ring* and other cases, the Supreme Court's analysis has often referred to § 28-1205 in its entirety, rather than specifically isolating "use" cases. For instance, the court summarized its opinions in *Ring* and *Pruett* as holding that "an unintentional crime could not serve as the predicate felony for a weapons charge under § 28-1205" and did not differentiate between "use" cases and "possession" cases. See *State v. Iromuanya*, 272 Neb. 178, 213, 719 N.W.2d 263, 293 (2006). While it is settled that the predicate offense for a "use" weapon charge in violation of § 28-1205 must be an intentional crime, we cannot say that this language alone requires that a predicate offense for a "possession" weapon charge must also be an intentional crime.

Regardless, in this case, the State's factual basis did support a finding that Morton was in possession of a firearm during the commission of an intentional crime, and therefore, we need not conclusively determine whether the rule from *Ring* applies in both "use" and "possession" cases.

At the plea hearing, the State's factual basis showed that during the altercation at the residence, Morton withdrew a loaded gun from his pocket, pointed it toward the front porch where several individuals were standing, and fired. Neb. Rev. Stat. § 28-1212.02 (Reissue 2016) states, in pertinent part, that a person is guilty of unlawful discharge of a firearm if he or she "unlawfully and intentionally discharges a firearm at an inhabited dwelling house" and that such a person shall be guilty of a Class ID felony. We conclude that the State's factual basis was sufficient to prove all of the elements of unlawful discharge of a firearm in violation of § 28-1212.02. Because it is an intentional crime, it may serve as the predicate felony for a weapon charge under § 28-1205.

On appeal, Morton differentiates his case from *State v. Tucker*, 278 Neb. 935, 774 N.W.2d 753 (2009). In that case, the district court found the defendant guilty of manslaughter by "'unintentionally causing the death of [the victim] while in the commission of an unlawful act'" and also found the defendant guilty of use of a deadly weapon to commit a felony, explaining that the predicate offense was the intentional crime of assault against the victim. *Id*. at 939, 774 N.W.2d at 757. On a petition for further review, the Supreme Court found no error, holding that "based on the predicate offense of intentional assault, the evidence was sufficient to support the trial court's judgment that [the defendant] was guilty of use of a weapon to commit a felony." *Id.* at 945, 774 N.W.2d at 760. In this case, Morton argues that because the district court "made no finding as to the predicate intentional offense supporting the weapon charge," his conviction must be vacated. Brief for appellant at 9.

Although we agree that it may be the best practice for a trial court to make specific findings regarding the predicate

offense for a weapon charge, we do not believe that the district court's failure to do so in this case constitutes an abuse of discretion. As discussed above, the State's factual basis was sufficient to show that Morton committed the intentional crime of unlawful discharge of a firearm. We cannot say that the reasons or rulings of the district court were clearly untenable or that Morton was deprived of a just result when the district court found him guilty of possession of a firearm during the commission of a felony. Accordingly, we conclude that the district court did not abuse its discretion in accepting Morton's no contest pleas. This argument fails.

## 2. Sentencing Errors

Morton argues that the district court abused its discretion in not imposing terms of probation rather than incarceration. In the alternative, he argues that the court imposed excessive sentences.

[9-11] Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Smith*, 302 Neb. 154, 922 N.W.2d 444 (2019). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

[12] Denial of probation and imposition of a sentence within statutorily prescribed limits will not be disturbed on appeal

absent an abuse of discretion. *State v. Thomas*, 238 Neb. 4, 468 N.W.2d 607 (1991).

### (a) Probation

Morton first argues that the district court abused its discretion in not imposing terms of probation, rather than incarceration. Morton points to Neb. Rev. Stat. § 29-2260(2)(c) (Reissue 2016), which permits a trial court to withhold a sentence of imprisonment at its discretion unless, inter alia, a lesser sentence would "depreciate the seriousness of the offender's crime or promote disrespect for law." Morton argues his lack of criminal history, his mental health issues, and the lack of evidence that he intended to cause harm to the victim support a sentence of probation.

Section 29-2260(3) provides a noncontrolling set of factors that trial courts may give weight to when considering a sentence of probation as opposed to a sentence of imprisonment. These factors include a consideration of whether

(a) The crime neither caused nor threatened serious harm;

(b) The offender did not contemplate that his or her crime would cause or threaten serious harm;

(c) The offender acted under strong provocation;

(d) Substantial grounds were present tending to excuse or justify the crime, though failing to establish a defense;

(e) The victim of the crime induced or facilitated commission of the crime;

(f) The offender has compensated or will compensate the victim of his or her crime for the damage or injury the victim sustained;

(g) The offender has no history of prior delinquency or criminal activity and has led a law-abiding life for a substantial period of time before the commission of the crime;

(h) The crime was the result of circumstances unlikely to recur;

(i) The character and attitudes of the offender indicate that he or she is unlikely to commit another crime;

(j) The offender is likely to respond affirmatively to probationary treatment; and

(k) Imprisonment of the offender would entail excessive hardship to his or her dependents.

*Id.*

[13,14] The Supreme Court has stated that § 29-2260 is a directive to the trial court as to certain factors to be considered in imposing the sentence, but also that § 29-2260 does not control the trial court's discretion in its conclusion reached as to the proper sentence to be imposed, after weighing the statutory factors. *State v. McCulley*, 305 Neb. 139, 939 N.W.2d 373 (2020). The specified factors must be "'accorded weight,'" but they are neither exclusive of other factors nor "'controlling the discretion of the court.'" *Id.* at 147, 939 N.W.2d at 381. An appellate court's review of an alleged abuse of the sentencing judge's discretion in refusing to withhold imprisonment under § 29-2260 must recognize the statutory guidelines set out in § 29-2260 for the direction of the sentencing judge in imposing or withholding imprisonment, but the factors are not mathematically applied. *State v. McCulley, supra.*

Furthermore, § 29-2260 does not require the trial court to articulate on the record that it has considered each sentencing factor, and it does not require the court to make specific findings as to the factors and the weight given them. *State v. McCulley, supra.* Thus, the absence of specific findings concerning the factors set forth in § 29-2260 cannot in itself be error or grounds for reversal. *State v. McCulley, supra.*

In reviewing a sentence that fails to withhold imprisonment, the appropriateness of the sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.* We review a sentence that is within the statutory limits for an abuse of discretion by examining whether it is supported by the evidence. *Id.*

Here, we determine that the district court did not abuse its discretion in failing to withhold a sentence of imprisonment on Morton's convictions. At the sentencing hearing, the court stated that it had considered Morton's young age at the time of the offense and his lack of a prior criminal history. However, the district court noted that Morton's actions had been a "serious offense" that resulted in the death of another person. The court further found that imprisonment of Morton was necessary for the protection of the public, that there was a substantial risk Morton would engage in additional criminal conduct during any period of probation, and that a lesser sentence would depreciate the seriousness of Morton's crime and promote disrespect for the law.

Considering this, we cannot say that the ruling of the district court denying Morton probation was untenable or deprived him of a substantial right or just result. The district court did not abuse its discretion, and this argument fails.

### (b) Excessive Sentence

Morton next argues, in the alternative, that the district court imposed excessive sentences. He claims that while the offenses he was convicted of were serious, "there is no need for him to be removed from society in order to protect the public" because Morton "does not pose a significant risk threat to society." Brief for appellant at 15. Because the sentences were within the statutory limits, the question is whether the district court abused its discretion.

Prior to pronouncing its sentence, the district court stated it had reviewed and considered the evaluations and reports from the probation office, as well as several letters from counsel and third parties. The court also stated that it had taken into consideration Morton's young age at the time of the offense, his lack of a criminal history, and also the "extreme benefit" Morton received as a result of the plea agreement, as well as the fact that Morton caused the victim's death. In making its decision, the court considered the nature and circumstances

of Morton's offenses, as well as Morton's history, character, and condition.

However, the fact that the district court considered the appropriate factors when deciding Morton's sentences does not, in and of itself, force this court to draw the conclusion that the district court did not abuse its discretion in sentencing Morton. In determining whether the district court abused its discretion in this case, we first analyze the case in light of the relevant factors set forth in *State v. Smith*, 302 Neb. 154, 922 N.W.2d 444 (2019).

Prior to sentencing, the probation office conducted an evaluation of Morton utilizing the "Level of Service/Case Management Inventory" (LS/CMI). The LS/CMI is a validated "'risk/need'" assessment tool that is designed specifically to determine the degree of risk that the offender presents to the community and risk to recidivate. The results of Morton's LS/CMI are contained within the PSR, which was completed by the probation office.

The PSR reflects that Morton was 16 years old at the time the offenses were committed. Prior to his arrest, Morton was a sophomore in high school, and he received mostly A's and B's in his classes. The personal history portion of the PSR showed that Morton's father was murdered while Morton was a young child and that he grew up without a strong male influence in his life. Both Morton and his mother reported having a close relationship. Morton's mother reported that while Morton was in middle school, he was suspended for a few days due to fighting. The PSR notes that "[w]hile the present case is serious, except for [the] fight in middle school, it does not appear [Morton] has an established pattern of violence over a period of time." The PSR further states that Morton may have had gang affiliations and ongoing problems with anger management, as well as a deficit in problem solving and prosocial skills. The LS/CMI ultimately found that Morton posed a "Medium Low risk to reoffend" across all of the categories evaluated.

It is uncontested that Morton's offenses involved violence and resulted in the loss of the victim's life. The PSR and the factual basis showed that Morton traveled with other individuals to the residence for the purpose of fighting with the occupants of the house. When the altercation intensified and an individual began using a vehicle to run over Morton and his companions, Morton withdrew a gun from his pocket and fired in the direction of the house, where several people were standing on the front porch. The victim was shot through the neck and died shortly thereafter. In a statement to police, Morton reported that he was "not aiming at anyone in particular" and was merely "pointing the gun in the direction of the house" because that was "where the other group was standing."

In addition to our analysis of the customarily considered factors, we also find instructive the sentences ordered in different Nebraska cases which involved similarly situated defendants convicted of like crimes.

In *State v. Neuberger*, No. A-13-411, 2014 WL 46420 (Neb. App. Jan. 7, 2014) (selected for posting to court website), a 17-year-old male pled no contest to manslaughter and possession of a firearm during the commission of a felony (the same charges found in Morton's case). The district court sentenced the defendant to 20 to 20 years' imprisonment on the manslaughter conviction and a consecutive 10 to 15 years' imprisonment on the possession of the firearm conviction. The evidence in *Neuberger* showed that the charges stemmed from an incident involving a confrontation between the defendant and other individuals, where the defendant obtained a sawed-off shotgun and shot one of the others involved in the altercation.

In *State v. Iromuanya*, 272 Neb. 178, 719 N.W.2d 263 (2006), the defendant was convicted of attempted second degree murder, second degree murder, and two counts of use of a weapon to commit a felony. The defendant was a 23-year-old male with no significant criminal history who drew a weapon and shot the victims when an argument at a party escalated.

The district court sentenced the defendant to 25 to 35 years' imprisonment on the attempted second degree murder conviction, life to life imprisonment on the second degree murder conviction, and 10 to 20 years' imprisonment on each of the two weapon convictions; all four sentences were ordered to be served consecutively. On appeal, the Supreme Court found that the sentence on the second degree murder conviction was excessive, modified it to 50 years' to life imprisonment, and ordered that the sentence for the attempted murder conviction and the second degree murder conviction should be served concurrently, while the sentences for the weapon convictions were to be served consecutively to the respective underlying felony and to each other.

In *State v. Aragon*, No. A-17-450, 2018 WL 1597372 (Neb. App. Jan. 31, 2018) (selected for posting to court website), a 16-year-old male pled guilty to two counts of robbery and one count of attempted use of a firearm to commit a felony. The charges in this case arose when the defendant broke into a residence, beat the occupants with the butt of a shotgun, and stole approximately $600 worth of items. At the sentencing hearing, the district court stated that the violence present in the crime was "'really shocking,'" *id.* at *4, and noted that the defendant had significant behavioral problems and gang affiliations and used both marijuana and cocaine. The district court sentenced him to concurrent terms of imprisonment of 14 to 20 years for each robbery conviction and a concurrent term of 3 to 5 years' imprisonment for the weapon conviction.

Finally, in *State v. Bradley*, No. A-17-644, 2018 WL 3868987 (Neb. App. Aug. 14, 2018) (selected for posting to court website), a 20-year-old male was convicted of possession of a deadly weapon by a prohibited person, terroristic threats, use of a deadly weapon to commit a felony, and tampering with a witness. The charges arose from an incident when the defendant was attempting to strangle his girlfriend in an alley and then shot at witnesses who attempted to intervene. The record showed that he had a significant criminal history and was at

a "'high risk'" to reoffend. *Id.* at \*14. In *Bradley*, the district court sentenced the defendant to consecutive sentences totaling 18 to 27 years' imprisonment across all four convictions.

First, we determine that the district court did not abuse its discretion in sentencing Morton to 15 to 20 years' imprisonment on count I, manslaughter. The record in this case shows that the district court considered the appropriate sentencing factors, outlined above, and that Morton's crime was one of violence that resulted in the death of another. Therefore, we affirm Morton's conviction and sentence on count I.

We reach the opposite conclusion with respect to Morton's sentence for count II. On count II of the State's amended information, Morton was convicted of possession of a firearm during the commission of a felony, in violation of § 28-1205(2)(c). The district court ordered the sentence on count II to be 30 to 40 years' imprisonment, and the sentence was required by statute to run consecutively to that on count I. See § 28-1205(3).

We recognize that no two criminal cases are alike and that unique factors may prove determinative when a district court considers a sentence. We also recognize that possession of a firearm during the commission of a felony is a Class II felony carrying with it a potential sentence of 1 to 50 years' imprisonment and that Morton's sentence was within those statutory limits. However, in comparing the facts and outcome of Morton's case to other Nebraska cases (see above), we find that Morton's sentence on count II appears to be an extreme outlier that leads us to closely scrutinize the propriety of the sentence. Further, we find it incongruous that the sentence for Morton's weapons conviction should be double that of his sentence for manslaughter, a crime of violence that resulted in the death of another. We believe the disproportionate nature of the two sentences is logically inconsistent, and we note that the district court did not take the opportunity to explain this disparity on the record.

We also consider that there was no evidence in either the factual basis or the PSR showing that Morton intentionally shot the victim. Rather, the record demonstrates that Morton's

actions took place amid a chaotic, melee-like atmosphere. There is no suggestion that Morton aimed his gun at the house with the intent to harm any specific individual. As we discussed above, the State's factual basis best supports the conclusion that the predicate felony for Morton's weapon conviction was unlawful discharge of a firearm, not manslaughter or assault. We do not minimize Morton's conduct; nor do we overlook the fact that the victim was killed as a result of that conduct. However, in light of our above analysis, especially considering Morton's young age and background, as well as the fact that similarly situated defendants (some at a much higher risk to reoffend) have received significantly lower sentences on similar charges, we believe that the reasons and rulings of the district court are untenable and that Morton was denied a just result in sentencing.

Taking into account all of the relevant circumstances, including, but not limited to, Morton's young age, his lack of a significant criminal history, the nature of the offense, and sentences issued in comparable cases, we conclude that the district court abused its discretion in sentencing Morton to 30 to 40 years' imprisonment on count II, possession of a firearm during the commission of a felony, and that the sentence was excessive. As noted, we find no abuse of discretion in sentencing on the manslaughter conviction.

Neb. Rev. Stat § 29-2308(1) (Reissue 2016) provides in pertinent part that in criminal appeals,

> the appellate court may reduce the sentence rendered by the district court against the accused when in its opinion the sentence is excessive, and it shall be the duty of the appellate court to render such sentence against the accused as in its opinion may be warranted by the evidence.

See, also, *State v. Iromuanya*, 272 Neb. 178, 719 N.W.2d 263 (2006); *State v. Etchison*, 188 Neb. 134, 195 N.W.2d 498 (1972); *State v. Oldenburg*, 10 Neb. App. 104, 628 N.W.2d 278 (2001). Based upon our statutory authority, we reduce Morton's sentence on count II, possession of a firearm

during the commission of a felony, to a term of imprisonment of not less than 10 years nor more than 15 years. This sentence will run consecutively to the sentence imposed by the district court on count I, as required by § 28-1205(3).

### 3. INEFFECTIVE ASSISTANCE
#### OF COUNSEL

[15,16] Morton next assigns that his trial counsel provided ineffective assistance. Generally, a voluntary guilty plea or plea of no contest waives all defenses to a criminal charge. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). Thus, when a defendant pleads guilty or no contest, he or she is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel. *Id.*

[17] Morton has different counsel on direct appeal than he did at trial. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *Id.*

[18-22] Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *State v. Blaha, supra*. When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would

have insisted on going to trial rather than pleading guilty. *Id.*
The two prongs of the ineffective assistance of counsel test
under *Strickland* may be addressed in either order. *State v.
Blaha, supra.*

[23,24] The fact that an ineffective assistance of counsel
claim is raised on direct appeal does not necessarily mean that
it can be resolved. The determining factor is whether the record
is sufficient to adequately review the question. *State v. Theisen*,
306 Neb. 591, 946 N.W.2d 677 (2020). The record is sufficient
if it establishes either that trial counsel's performance was not
deficient, that the appellant will not be able to establish preju-
dice, or that trial counsel's actions could not be justified as a
part of any plausible trial strategy. *Id.*

### (a) Failure to Challenge
### State's Factual Basis

Morton first assigns that his trial counsel was ineffective
when he failed to object to the State's factual basis as it per-
tained to the predicate offense for the weapon charge. Morton
reiterates his argument that the State's factual basis was insuf-
ficient to sustain his conviction on the possession of a firearm
charge, that his counsel was deficient for failing to object to
the factual basis, and that he was therefore prejudiced when he
was sentenced to a term of 30 to 40 years' imprisonment on
that conviction.

[25] We determine that the record conclusively shows that
Morton's trial counsel was not deficient. As we discuss above,
the State's factual basis was sufficient to sustain Morton's
conviction for possession of a firearm during the commission
of a felony on the theory that unlawful discharge of a firearm
was the predicate offense for the weapon charge. Therefore,
even if Morton's counsel had objected on this basis at the plea
hearing, the objection would have been overruled, or the dis-
trict court may have given the State an opportunity to clarify
its factual basis prior to asking Morton to enter his pleas. As
a matter of law, counsel cannot be ineffective for failing to
raise a meritless argument. *State v. Collins*, 299 Neb. 160, 907

N.W.2d 721 (2018). For the same reasons, we determine that the record shows that Morton would be unable to prove prejudice on this claim. This argument fails.

### (b) Failure to Request Expert Witness Evaluation

Finally, Morton assigns that he received ineffective assistance of counsel when his trial counsel did not obtain an expert "to opine as to the level of Morton's culpability when taking into account his age and maturity." Brief for appellant at 19. He claims that if such an expert had been retained by his counsel, he would have received a more lenient sentence. Largely, we find that this claim is speculative and is not supported by either the record or Morton's own arguments.

On appeal, Morton has not pled that his counsel's performance fell below that of a lawyer with ordinary training and skill in criminal law. The record reflects, and Morton admits, that his trial counsel did obtain two separate assessments from a licensed psychologist prior to the sentencing hearing. The two evaluations were included within the PSR and were considered by the district court in determining its sentence. Information within the PSR (including those assessments) referenced Morton's young age at the time of the offense, his troubled childhood, and his history of mental health issues. On appeal, Morton does not allege that his counsel's conduct fell below appropriate standards expected of criminal attorneys in this state; rather, he speculates that a different expert's opinion might have yielded a more desirable outcome at sentencing. We do not believe that the record before us or Morton's arguments on appeal sufficiently establish deficient performance under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). This claim of ineffective assistance of counsel fails.

### VI. CONCLUSION

We conclude that based on the predicate offense of unlawful discharge of a firearm, the factual basis was sufficient

to support the district court's judgment that Morton was guilty of possession of a firearm during the commission of a felony. We affirm Morton's convictions on both counts, and we also affirm the sentence on count I. We conclude that the sentence imposed by the district court of 30 to 40 years' imprisonment on count II, possession of a firearm during the commission of a felony, is excessive, and we modify that sentence to a term of imprisonment of not less than 10 years nor more than 15 years, with the sentence on count II to be served consecutively to the sentence on count I. We further conclude that Morton's claims of ineffective assistance of counsel fail.

Affirmed as modified.