IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. EACKER


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

TRISTEN R. EACKER, APPELLANT.


Filed October 19, 2021.    No. A-21-017.


Appeal from the District Court for Lancaster County: SUSAN I. STRONG, Judge. Affirmed.

Jonathan M. Braaten, of Anderson, Creager & Wittstruck, P.C., L.L.O, for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.


PIRTLE, Chief Judge, and MOORE and WELCH, Judges.

MOORE, Judge.

## INTRODUCTION

Following his plea of no contest, Tristen R. Eacker was convicted of attempted possession of a firearm with a felony drug violation. He was sentenced to 7 to 12 years' imprisonment. Eacker claims on appeal that his sentence is excessive and that he received ineffective assistance of counsel. Finding no error, we affirm.

## STATEMENT OF FACTS

On January 31, 2019, the State filed an information in the district court for Lancaster County charging Eacker with four counts of possession of a controlled substance, in violation of Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 2020), all Class IV felonies; one count of possession with the intent to deliver a controlled substance, in violation of §§ 28-416(1)(a) and (2)(b), a Class IIA felony; one count of possession of a stolen firearm, in violation of Neb. Rev. Stat. § 28-1212.03

(Cum. Supp. 2020), a Class IIA felony; and possession of a firearm with a felony IIA drug violation, in violation of § 28-416(16), a Class II felony.

*Motion to Suppress.*

Eacker filed a motion to suppress on April 15, 2019, and an amended motion to suppress on October 3. These motions sought to suppress all evidence seized in the search of Eacker's residence following his arrest on November 2, 2018.

In his motions to suppress, Eacker asserts that on November 2, 2018, Lincoln Police Department officers gathered outside of Eacker's residence in anticipation of obtaining a search warrant. Prior to police obtaining the warrant, other persons came out of Eacker's residence. After that, police entered Eacker's residence without a warrant and began conducting a search. During this warrantless search, an officer found a plastic baggie of marijuana inside the residence. The discovery of the marijuana inside the residence was noted in the affidavit for search warrant. Eacker argued in his motions that the protective sweep was a warrantless search of his residence in violation of his constitutional rights. Eacker also contended that the subsequently obtained search warrant was tainted by the "illegal" entry into his residence because the marijuana found in the warrantless search was included in the search warrant affidavit.

A suppression hearing was held on October 24, 2019. Testimony was given by the four officers involved in the investigation of Eacker and the search of his residence.

Sergeant Jeff Sorensen testified that on November 2, 2018, officers detained Eacker at a traffic stop roughly two blocks away from his residence. Shortly after, Eacker's mother and brother approached the scene of Eacker's detention and began confronting the officers. Sorensen testified that based on the information gathered during the traffic stop, probable cause existed to search Eacker's residence and Sorenson sent Investigator Joseph Villamonte to draft an affidavit for a search warrant.

Sorensen testified that because the traffic stop had occurred away from Eacker's residence, seizing the residence was not initially necessary. However, because of the confrontational nature of Eacker's mother and brother at the traffic stop, Sorensen felt that seizing the residence and preventing Eacker's family members from entering would benefit officer safety. Eacker's mother and brother then approached the residence where officers had already arrived to prevent entry. Eacker's family continued to be confrontational with law enforcement, and Sorensen testified that in managing Eacker's family members, officers turned their backs to the residence which created a safety issue.

Sorensen testified that Eacker's mother informed him that there were additional people inside the home. After officers knocked on the front door, two other members of Eacker's family exited the residence. At the time, only one officer was available to be placed at the back of the residence. Sorensen additionally testified to a history of individuals escaping the residence by a second story window to evade law enforcement. Sorensen decided that a protective sweep of the home would be necessary because it was unknown to him if there were others in the residence, and he had a concern for the safety of the officers as well as bystanders at the scene.

The officers who conducted the protective sweep testified that they had looked in the closet in the residence because it was large enough for a person to hide inside. No furniture was blocking

access to the closet. Inside the closet the officers found a baggie of marijuana. The officers did not remove the baggie of marijuana at the time of the protective sweep.

Villamonte testified that he was already in the process of drafting the affidavit when he was informed by Sorensen that marijuana had been found at Eacker's residence. Villamonte included that fact at the end his affidavit for search warrant.

On January 17, 2020, the district court denied Eacker's motion to suppress in a 12-page order. The court found that the protective sweep was "justified by articulable facts and inferences supporting the officers' reasonable belief that additional people could be inside the home posing a danger to them during or following the arrest of the Defendant outside the home." The court additionally found that Villamonte's affidavit was sufficient to obtain a search warrant for Eacker's residence even without the discovery of the marijuana during the protective sweep. The court noted that the affidavit contained 6 pages of information detailing law enforcement's surveillance of Eacker from April 2017 to November 2018. The court concluded that based on the affidavit, the discovery of the evidence found at Eacker's residence was inevitable. The court concluded that the evidence seized during the November 2 search was admissible and not subject to exclusion.

*Entry of Plea Hearing.*

Pursuant to a plea agreement, the State filed an amended information on June 23, 2020, charging Eacker with one count of attempted possession of a firearm with a felony IIA drug violation, a class IIA felony, in violation of Neb. Rev. Stat. § 28-201(4)(b) (Cum. Supp. 2020) and § 28-416(16). At a hearing held on October 1, Eacker pled no contest to the amended information. According to the factual basis provided by the State:

[B]eginning in the time frame of July 1st, 2018, investigators with the Lincoln Police Department began to observe posts on social media platforms that led them to believe that an individual identified as Tristen Eacker, the defendant before the Court, may be involved in the distribution of marijuana

On November 2nd, 2018, investigators believed they observed another post involving Mr. Eacker, a firearm and the distribution of marijuana. That ultimately around 9:37 p.m. that day, investigators served a search warrant . . . based on that information.

Located on the top floor, southeast bedroom, several firearms were located. Under the mattress in this room was a Smith and Wesson MP rifle, with a magazine. In a dresser drawer in the room, there were three handguns located. The handguns were a Smith and Wesson, a Smithfield XDS and a black Smith and Wesson Shield. Smith and Wesson Shield was found to be stolen from a related case.

Also located in the room were two digital scales with marijuana residue. Investigator[s] located a total of 268.2 grams of marijuana in the room, and in the closet of the same room. Several plastic baggies consistent with the packaging and distribution of narcotics were found in the same room, along with the empty box of plastic baggies. There were also other items located in the room.

But ultimately law enforcement . . . found this room to belong to the defendant, based on a Nebraska vehicle title bearing the name of Mr. Eacker and a W-2 tax form with his information, as well.

All these events occurred in Lancaster County, Nebraska.

*Sentencing Hearing.*

On December 21, 2020, the district court sentenced Eacker to 7 to 12 years' imprisonment, with credit for 170 days already served.

Eacker then appealed.

ASSIGNMENTS OF ERROR

Restated and combined, Eacker assigns that (1) the district court abused its discretion by imposing an excessive sentence and (2) his trial counsel was ineffective in failing to make compelling arguments during the suppression hearing.

STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). Abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

ANALYSIS

*Excessive Sentence.*

Eacker was convicted of attempted possession of a firearm with a felony IIA drug violation, a Class IIA felony. A Class IIA felony is punishable by a maximum of 20 years' imprisonment; there is no minimum term of imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2020). Eacker was sentenced to a term of 7 to 12 years' imprisonment. His sentence is within the statutory range. Nevertheless, Eacker argues that the court abused its discretion in the sentence imposed.

Eacker first asserts that the district court abused its discretion in imposing a prison sentence instead of placing him on probation. Denial of probation and imposition of a sentence within statutorily prescribed limits will not be disturbed on appeal absent an abuse of discretion. *State v. Morton*, 29 Neb. App. 624, 957 N.W.2d 522 (2021). See *State v. Zitterkopf*, 236 Neb. 743, 463 N.W.2d 616 (1990) (whether sentence imposed is probation or incarceration is matter within discretion of trial court).

Statutory guidelines in granting probation are found in Neb. Rev. Stat. § 29-2260 (Reissue 2016), which provides:

(2) Whenever a court considers sentence for an offender convicted of either a misdemeanor or a felony for which mandatory or mandatory minimum imprisonment is not specifically required, the court *may* withhold sentence of imprisonment *unless*, having regard to the nature and circumstances of the crime and the history, character, and condition of the offender, the court finds that imprisonment of the offender is necessary for protection of the public because:

(a) The risk is substantial that during the period of probation the offender will engage in additional criminal conduct;

(b) The offender is in need of correctional treatment that can be provided most effectively by commitment to a correctional facility; or

(c) A lesser sentence will depreciate the seriousness of the offender's crime or promote disrespect for law.

(Emphasis supplied.)

In a letter dated December 18, 2020, which was included in the presentence report, the State informed the district court that there was an ongoing investigation into Eacker's residence which led to the execution of another search warrant on December 16. The State noted that law enforcement had found 2.5 pounds of marijuana in Eacker's bedroom and multiple firearms in the house generally. At the time of sentencing, there was a warrant out for Eacker's arrest related to this December 2020 search and seizure. The State conceded that the court could only give limited weight to the information contained in the December 18 letter because the matters had not yet been adjudicated. However, because Eacker had submitted a character letter on his own behalf, the State requested that the Court give its letter the same weight as a witness character letter since the State's letter spoke to a pattern of criminal behavior.

During the sentencing hearing on December 21, 2020, the district court spoke directly to the exclusionary factors found in § 29-2260(2). The court noted the serious nature of Eacker's charge as well as the additional charges that were dismissed pursuant to the plea agreement. The court also considered Eacker's "apparent ongoing troubles" though it did not give the December 2020 investigation and active warrant the same weight as previously adjudicated charges. The court found that there were "substantial and compelling reasons not to place [Eacker] on probation," including that the risk of Eacker engaging in additional criminal conduct while on probation was substantial, and a lesser sentence would depreciate the seriousness of Eacker's crime, and thus promote disrespect for the law, satisfying the exclusionary factors of § 29-2260(2)(a) and (c).

The district court gave regard to the nature and circumstances of the crime. Reviewing the "history, character, and condition" of Eacker, the court found that Eacker's imprisonment was necessary to protect the safety and security of the public. Having properly applied the statutory guidelines denying probation, the district court did not abuse its discretion.

Eacker next asserts that the district court imposed an excessive term of incarceration when it sentenced him to 7 to 12 years' imprisonment. When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the crime. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Eacker was 21 years old at the time of sentencing. He has some juvenile criminal history which we will not recount here. His adult criminal history includes multiple drug-related charges:

two separate charges of possession of 1 ounce or less of marijuana in 2017 for which he was issued two fines of $300; possession of drug paraphernalia in 2017 for which he was fined $100; possession of 1 ounce or less of marijuana in 2018 for which he was fined $400; and two separate charges of possession of drug paraphernalia in 2018 for which he was issued fines of $25 and $100. He was also charged with failing to appear in court in 2017 for which he was fined $50. In addition to the present case, at the time of sentencing Eacker had three pending charges of possession of 1 ounce or less of marijuana, a pending charge of possession of drug paraphernalia, and a pending charge for failing to appear in court. His record also includes multiple fines for various traffic offenses including operating a vehicle without a license, driving under a suspended license, and driving with a fictitious license plate. Eacker has been sentenced to fines, out-of-home placement, and juvenile probation from which he had an unsatisfactory release.

A "Level of Service/Case Management Inventory" assessed Eacker as having a "very high risk" to reoffend. Eacker scored "very high risk" in the criminogenic risk factor domains for education/employment, companions, and antisocial pattern. He scored "high risk" in the domains for criminal history, procriminal attitude/orientation, family/marital, alcohol/drug problem, and leisure/recreation.

The district court indicated that it had reviewed the PSI. The court found imprisonment of Eacker to be "necessary to protect the safety and security of the public," and sentenced Eacker as set forth previously, concluding that a lesser sentence would depreciate the seriousness of the offense and promote disrespect for the law.

The district court appropriately weighed these considerations regarding the nature of the offense against the other mitigating factors Eacker advances. Further, a sentencing court in noncapital cases may consider a defendant's unadjudicated misconduct in determining an appropriate sentence. *State v. Alford*, 6 Neb. App. 969, 578 N.W.2d 885 (1998). Having considered the record and the relevant factors in this case, we cannot say that the district court abused its discretion in sentencing Eacker. See *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020) (sentence imposed within statutory limits will not be disturbed on appeal absent abuse of discretion by trial court).

*Ineffective Assistance of Counsel.*

Generally, a voluntary guilty plea or plea of no contest waives all defenses to a criminal charge. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). Thus, when a defendant pleads guilty or no contest, he or she is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel. *Id.*

Eacker claims his trial counsel was ineffective. He is represented on direct appeal by different counsel than the initial and replacement trial counsel. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Lierman, supra*. Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id.* A record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be

justified as a part of any plausible trial strategy. *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020).

In order to know whether the record is insufficient to address assertions on direct appeal that trial counsel was ineffective, appellate counsel must assign and argue deficiency with enough particularity (1) for an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) for a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *Id.* When a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id.*

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Id.* When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *Id.* The two prongs of the ineffective assistance of counsel test under *Strickland* may be addressed in either order. *State v. Blaha, supra*.

With these governing principles in mind, we turn now to address Eacker's claim that his trial counsel was ineffective. Eacker argues that his trial counsel was deficient in failing to make compelling arguments to show there was no legitimate need for a protective sweep. Specifically, he claims that his trial counsel failed to adequately question whether there was a reasonable belief that more individuals were inside the home at the time the protective sweep was conducted. The record on appeal is sufficient to conclude that trial counsel's performance was not deficient.

At the suppression hearing, Sorensen was asked on direct examination by the State, as well as on cross-examination by Eacker's trial counsel, why Sorensen believed there may have been others inside the residence. Sorensen testified that Eacker's mother informed him that there were additional people inside the home. At that time, only one officer was available to be placed at the back of the residence. According to Sorensen, Eacker's family members were confrontational at the scene which required the officers to manage them, thereby hampering their ability to monitor the residence. Sorensen testified that having unknown individuals inside the home posed a risk to officer safety and the confrontational nature of Eacker's family necessitated a protective sweep prior to a search warrant being obtained. Sorensen also noted past examples of individuals hiding from law enforcement in Eacker's residence. Sorensen's testimony on both direct and cross-examination goes directly to his belief that there was a legitimate need to do a protective sweep of the residence prior to obtaining a search warrant. Eacker does not allege what additional line of questioning by his trial counsel would have resulted in the district court granting his motion to suppress. The court was fully advised of Sorensen's belief that a protective sweep was

necessary, and it cannot be said that trial counsel was deficient in failing to ask further questions regarding the basis for Sorenson's belief.

We note that because of his entry of a plea, Eacker waived his right to challenge the district court's denial of his motion to suppress. Additionally, Eacker does not address the court's finding that Villamonte's affidavit was sufficient to obtain a search warrant for Eacker's residence, even without the discovery of marijuana in Eacker's closet during the protective sweep. Given the inevitability of the search and seizure of the drug evidence, Eacker cannot show that he was prejudiced by his trial counsel's alleged deficiency in questioning whether there was a legitimate need for a protective sweep.

Accordingly, the claim of ineffective assistance of trial counsel fails.

## CONCLUSION

For the reasons set forth above, we find the district court did not abuse its discretion in the sentences imposed. We affirm Eacker's conviction and sentence. In addition, we conclude the record is sufficient to address and reject Eacker's claim of ineffective assistance of trial counsel.

AFFIRMED.