IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. CUTAIA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

BRANDON J. CUTAIA, APPELLANT.

Filed November 2, 2021.    No. A-21-002.

Appeal from the District Court for Sarpy County: MICHAEL A. SMITH, Judge. Affirmed.

Douglas J. Amen, of Douglas J. Amen Law, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and Jordan Osborne for appellee.

PIRTLE, Chief Judge, and MOORE and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Brandon J. Cutaia appeals his plea-based convictions for stalking and third degree domestic assault. On appeal, he contends that the Sarpy County District Court erred in (1) denying his motion to withdraw his pleas, (2) finding that the factual basis provided by the State established venue in Sarpy County, and (3) in granting the State's motion to consolidate. His fourth assignment of error is that his trial counsel was ineffective in failing to (a) obtain discovery from the public defender's office, (b) investigate Cutaia's cell phone, (c) interview and obtain statements from defense witnesses, (d) object to the factual basis for stalking, and (e) properly calculate time served. For the reasons set forth herein, we affirm.

- 1 -

## II. STATEMENT OF FACTS

### CHARGES, CONSOLIDATION OF CASES, AND PLEA HEARING

In 2019, Cutaia was charged in Sarpy County District Court with the strangulation of his girlfriend. As a result of this incident, the victim obtained a protection order against Cutaia which was served in November. Although the Sarpy County Public Defender's Office was initially appointed to represent Cutaia, he eventually hired replacement counsel who entered his appearance in the case in March 2020. The same day, he filed stipulations for reciprocal discovery.

In May 2020, in a separate case but involving the same victim, the State charged Cutaia with stalking, a Class IIIA felony, and violation of a domestic violence protection order, a Class I misdemeanor. Following a motion to consolidate filed by the State, the district court consolidated the two cases, over Cutaia's objection, on the basis that the alleged offenses were "of a similar character and may be viewed as part of a common scheme" and that consolidation would not prejudice Cutaia.

Pursuant to a plea agreement, on August 25, 2020, Cutaia pled guilty to stalking, a Class IIIA felony, and pled no contest to an amended charge of third degree domestic assault, a Class I misdemeanor. The strangulation charge in the separate case was dismissed by the State.

In relation to the third degree domestic assault charge, the State's factual basis and presentence investigation report (PSR) indicated that on October 30, 2019, in Sarpy County, Nebraska, the victim, Cutaia's girlfriend, reported to law enforcement that she was awakened from sleep by Cutaia "forcibly shoving a slice of pizza in her face." He called her names and "then forcibly applied his hand to her mouth and nose restricting her breathing. She stated that Cutaia then put his other hand over her mouth and nose causing her to be unable to breathe." The victim stated this lasted for "at least a minute" while she thrashed and kicked in an attempt to break free. As a result of this incident, the victim obtained a protection order which was served on Cutaia on November 7, 2019. The protection order prohibited Cutaia from threatening, assaulting, molesting, attacking, or otherwise disturbing the victim's peace. The protection order also restricted Cutaia from telephoning, contacting, or otherwise communicating with the victim and excluded him from the victim's residence.

Regarding the stalking charge, the State's factual basis indicated that, on February 6, 2020, the victim, Cutaia's girlfriend, reported to law enforcement that Cutaia had been attempting to contact her "several times" despite an active protection order being in place restricting him from "threatening, assaulting, molesting, attacking, or otherwise disturbing the peace" of the victim. The victim also advised that, while she was at a bar, "an individual came up to her and stated that she was paid by a man named Brandon to take pictures of [the victim] at a bar." The victim further advised that she found two tracking devices on her vehicle, one of which was in a car seat, and that "numerous times around the city she would see [Cutaia] following her in an area where she was located." When asked about the tracking devices, Cutaia responded that "he was tracking his son and not [the victim]." The State further set forth that, in February 2020, Cutaia called the child abuse hotline reporting that the victim had been drinking at a bar and that the children's babysitter was noticing signs of intoxication of the victim when she picked up her children. Officers also listened to jail calls where Cutaia called his son and asked him "to pick a fight with [the victim]

so she would get angry enough to hit him so [she would] be arrested for child abuse." At another point, Cutaia called his mother and asked her to call the victim at her work because the victim's "place of employment is not a violation of the Protection Order because it was not mentioned in the Protection Order." Officers were able to determine that Cutaia used a "spoofing application" on his phone to contact the victim's place of employment to find out her work hours. Officers also located numerous messages on Cutaia's phone talking about where the victim was located during January and February 2020 and, at one point, Cutaia sent a message to his mother that he was parked down the block from the victim's house. The State asserted that all the events occurred in Sarpy County, Nebraska.

Following the recitation of the factual bases by the State, the district court asked defense counsel "Any comment regarding the factual basis?" to which counsel responded "No objection for the purposes of factual basis, Your Honor." The State accepted Cutaia's pleas finding that they had been knowingly, intelligently, and voluntarily entered.

2. MOTION TO WITHDRAW PLEAS

Prior to the sentencing hearing, Cutaia filed a motion to withdraw his plea for the reasons that (1) "the State misspoke during the entry of plea when it stated that all events occurred in Sarpy County, which was incorrect. [Cutaia] is being held accountable for events which took place and/or originated outside of and/or had no connection to Sarpy County" and (2) "the State withheld exculpatory evidence from the defense [by] not furnishing defense counsel [with videos] which had been provided to the Public Defender's office. Hired counsel for [Cutaia] had not received the videos before the plea hearing."

During the 2-day hearing on the motion to withdraw, Cutaia offered into evidence an affidavit by replacement counsel with attachments that included a photocopy of a DVD that he alleged was not initially provided to him by the State, but which was later provided after Cutaia had entered pleas in this case. A viewable copy of the DVD was not included in the exhibit, only a photocopy of the DVD itself was attached to the affidavit. Cutaia made three arguments to the district court. First, he argued that the factual basis provided by the State was insufficient to establish venue in Sarpy County for the stalking charge. Second, he argued that the stalking conviction was barred by double jeopardy because some of the events referred to in the State's factual basis were the same events forming the basis for a Douglas County conviction for violation of a protection order. Finally, Cutaia argued that his current defense counsel had not been provided material evidence by the State prior to the entry of Cutaia's pleas.

In response, the State asserted that the State had turned over all required evidence to Cutaia's prior defense counsel, the Sarpy County Public Defender's Office. Regarding venue, the prosecutor noted that he could have "been more eloquent" in setting forth the factual basis for stalking by explaining which events occurred in which county, but that Neb. Rev. Stat. § 29-1301.01 (Reissue 2016) allowed for jurisdiction "based upon [Cutaia's] actions." Finally, the prosecutor argued that he could use the same facts that supported Cutaia's Douglas County conviction for violation of a protection order because those facts were part of the course of conduct supporting the Sarpy County stalking charge.

At the close of the hearing, the district court denied Cutaia's motion to withdraw his plea for the reasons that the double jeopardy claim failed because "[t]he dates and times and locations listed in the two Informations and the matters are just different. There's really no showing that they are, in fact, the same conduct that's being punished," the State had fulfilled its statutory obligation to provide discovery, and the fact that former defense counsel may not have turned over certain discovery to current defense counsel was not a good and just reason to allow withdrawal of Cutaia's pleas.

### 3. Sentencing

At the sentencing hearing the district court stated:

The Court has considered the nature and circumstances of the crime, the history, character, and condition of [Cutaia], the statements in the presentence investigation, and finds there are substantial and compelling reasons why [Cutaia] cannot effectively and safely be supervised on probation, and a lesser sentence would depreciate the seriousness of the crime, would promote disrespect for the law. Incarceration is necessary to protect the security of the public. The risk is substantial that during a period of probation [Cutaia] will likely engage in additional criminal conduct. The court cannot find the circumstance[s] . . . of this crime are unlikely to [recur], and the Court cannot find that the character and attitudes of [Cutaia] indicate that he is unlikely to commit another crime.

The court sentenced Cutaia to 2 years' imprisonment for stalking followed by 9 months of post-release supervision and 90 days' imprisonment for third degree domestic assault. The court ordered the sentences to run concurrently and Cutaia was awarded credit for 134 days previously served. Cutaia has timely filed this direct appeal and is represented by different counsel than represented him during his plea and sentencing.

## III. ASSIGNMENTS OF ERROR

Cutaia's assignments of error, renumbered and restated, allege that the district court (1) erred in granting the State's motion to consolidate, (2) committed plain error in finding that the factual basis provided by the State for the stalking charge established venue in Sarpy County, and (3) erred in denying his motion to withdraw his pleas. His fourth assignment of error is that his trial counsel was ineffective in failing to (a) obtain discovery from the public defender's office, (b) investigate Cutaia's cell phone, (c) interview and obtain statements from defense witnesses, (d) object to the factual basis for stalking, and (e) properly calculate time served.

## IV. STANDARD OF REVIEW

A trial court's ruling on a motion for consolidation of prosecutions properly joinable will not be disturbed on appeal absent an abuse of discretion. *State v. McPherson,* 266 Neb. 715, 668 N.W.2d 488 (2003); *State v. Clark*, 21 Neb. App. 581, 842 N.W.2d 151 (2013).

An appellate court may find plain error on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and

fairness of the judicial process. *State v. Childs*, 309 Neb. 427, 960 N.W.2d 585 (2021). Generally, we will find plain error only when a miscarriage of justice would otherwise occur. *Id*.

A trial court has discretion to allow defendants to withdraw their guilty or no contest pleas before sentencing. *State v. Carr*, 294 Neb. 185, 881 N.W.2d 192 (2016). An appellate court will not disturb the trial court's ruling on a presentencing motion to withdraw a guilty or no contest plea absent an abuse of discretion. *Id*.

Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*. When the claim is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id*.

Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019); *State v. Duckworth*, 29 Neb. App. 27, 950 N.W.2d 650 (2020).

## V. ANALYSIS

### 1. MOTION TO CONSOLIDATE

First, Cutaia contends that the district court erred in granting the State's motion to consolidate the two cases for purposes of trial. He contends that the cases did not involve the same transaction or series of events and that the consolidation prejudiced him.

The voluntary entry of a guilty plea or a plea of no contest waives every defense to a charge, whether the defense is procedural, statutory, or constitutional. *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019). Exceptions include the defenses of insufficiency of the indictment, information, or complaint; ineffective assistance of counsel; and lack of jurisdiction. *Id*. A sufficient factual basis is a requirement for finding that a plea was entered into understandingly and voluntarily. *State v. Ettleman*, 303 Neb. 581, 930 N.W.2d 538 (2019); *State v. Wilkinson*, 293 Neb. 876, 881 N.W.2d 850 (2016); *State v. Morton*, 29 Neb. App. 624, 957 N.W.2d 522 (2021).

A challenge of a trial court's ruling granting consolidation of two cases for trial is not one of the permitted challenges following a plea of guilty or no contest to the charged offenses. Thus, by entering guilty and no contest pleas, Cutaia waived any challenges to the district court's decision to grant the State's motion to consolidate his cases.

### 2. VENUE

Second, Cutaia contends that the district court committed plain error in finding that the factual basis provided by the State for the stalking charge established venue in Sarpy County. He contends that, in support of the charge, the prosecutor "listed several instances allegedly involving [Cutaia] contacting [the victim]. However, [the prosecutor] failed to establish that the events he

conveyed to the court actually occurred in Sarpy County. In fact, many of them occurred in Douglas County." Brief for appellant at 17.

The voluntary entry of a guilty plea or a plea of no contest waives every defense to a charge, whether the defense is procedural, statutory, or constitutional. *State v. Manjikian, supra*. Exceptions include the defenses of insufficiency of the indictment, information, or complaint; ineffective assistance of counsel; and lack of jurisdiction. *Id*. A sufficient factual basis is a requirement for finding that a plea was entered into understandingly and voluntarily. *State v. Ettleman, supra*; *State v. Wilkinson, supra*; *State v. Morton, supra*. A defendant does not waive a challenge to the factual basis by entering a plea, because a sufficient factual basis is a prerequisite for a judicial finding that the plea was entered into understandingly and voluntarily. *State v. Wilkinson, supra*; *State v. Morton, supra*.

However, it is possible for a defendant to waive challenges to the factual basis under certain circumstances. In *State v. Ettleman*, 303 Neb. at 594, 930 N.W.2d at 547, after finding that the State's factual basis was insufficient to support the offense, the Nebraska Supreme Court held:

> Our opinion today should not be read to preclude a defendant from being treated as having waived an objection to the sufficiency of the State's factual basis where the record of a plea colloquy demonstrates that the trial court specifically asked the defendant or his or her counsel whether the factual basis provided by the State is sufficient to support the plea and the defendant failed to object to its sufficiency upon inquiry by the court.

Here, unlike *Ettleman*, after the State provided the factual basis, the district court asked defense counsel "Any comment regarding the factual basis?" to which counsel responded "No objection for the purposes of factual basis, Your Honor." Thus, because the record demonstrates that the district court specifically asked defense counsel if he had any comments regarding the factual basis and counsel responded that he had no objections, Cutaia has waived the issue of the sufficiency of the factual basis to support his pleas.

Further, there was no plain error in the district court's finding that the factual basis was sufficient to support Cutaia's conviction of stalking. Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Coomes*, 309 Neb. 749, 962 N.W.2d 510 (2021). Although we agree with Cutaia that some of the alleged incidents occurred outside of Sarpy County, § 29-1301.01, the statute dealing with venue for crimes committed in different counties, provides:

> If any person shall commit an offense against the person of another, such accused person may be tried in the county in which the offense is committed, or in any county into or out of which the person upon whom the offense was committed may, in the prosecution of the offense, have been brought, or in which an act is done by the accused in instigating, procuring, promoting, or aiding in the commission of the offense, or in aiding, abetting, or procuring another to commit such offense.

In *State v. Petersen*, 16 Neb. App. 339, 344-45, 744 N.W.2d 266, 270-71 (2008), this court relied upon § 29-1301.01 in rejecting the defendant's argument that Sarpy County was not the proper venue for the charge of child enticement by computer because the computer used to commit the crime was located in Douglas County. We held:

> The offense of child enticement involves the soliciting, coaxing, enticing, or luring of a child or a police officer believed by a defendant to be a child. Thus, the crime requires that there be a recipient of a defendant's actions in order for soliciting, coaxing, enticing, or luring to occur. In the instant case, the police officer being solicited, the recipient of Petersen's actions, was located in Sarpy County and was receiving and responding to [the defendant's] messages from a computer located in Sarpy County. Therefore, the place where the soliciting, coaxing, enticing, or luring occurred was in Sarpy County. Further, the meeting which was arranged between Petersen and Missy took place in Sarpy County. Thus, we conclude that Sarpy County is a county "in which an act is done by the accused in instigating, procuring, promoting, or aiding in the commission of the offense." Accordingly, Sarpy County is a proper venue in which to hold Petersen's trial for the offense of child enticement by computer.

*Id.*, 16 Neb. App. at 344-45, 744 N.W.2d at 270-71. See, also, *State v. Phelps*, 241 Neb. 707, 490 N.W.2d 676 (1992) (in kidnapping prosecution, venue was proper in county where 9-year-old victim resided even though victim's clothing and defendant's admission of "getting out of . . . vehicle, holding the child's arms, becoming aroused, being frightened, and departing" all occurred in second county where victim did not have ability to transport herself out of her county of residence and thus circumstantial evidence was sufficient to support conclusion that victim was originally abducted in county of residence); *State v. Ellis*, 208 Neb. 379, 303 N.W.2d 741 (1981), *disapproved on other grounds, State v. Riensche*, 283 Neb. 820, 812 N.W.2d 293 (2012) (in manslaughter prosecution, evidence including that victim did not have her own transportation, defendant was absent from class at university on day on which victim disappeared, and that hairs found in defendant's automobile exhibited same characteristics as hairs taken from victim, sufficiently indicated that victim had been taken, for criminal purposes, from county in which she lived to county in which her remains were found so as to sustain venue in the county of residence); *State v. Tiff*, 199 Neb. 519, 260 N.W.2d 296 (1977) (in prosecution for first degree sexual assault, venue was proper in county where automobile trip originated and concluded regardless of where actual sexual assault occurred); *State v. Lindsey*, 193 Neb. 442, 227 N.W.2d 599 (1975) (where incident leading to prosecution for resisting police officer arose out of officer's attempt to arrest defendant for speeding and which ended with defendant resisting as defendant was sitting in truck which straddled county line, court located in one of two counties in question could proceed with prosecution either under statute providing that where offense is committed on county line, trial of offense may be had in either county divided by such line, or under § 29-1301.01); *State v. Garza*, 191 Neb. 118, 214 N.W.2d 30 (1974) (where trip during which rape occurred originated in Douglas County, venue was proper in Douglas County even though actual rape may have occurred in another county).

Here, Cutaia was convicted of stalking. "Any person who willfully harasses another person or a family or household member of such person with the intent to injure, terrify, threaten, or intimidate commits the offense of stalking." Neb. Rev. Stat. § 28-311.03 (Reissue 2016). We look to both the factual basis provided by the State and the PSR to determine whether the State proved venue. See, *State v. Warlick*, 308 Neb. 656, 956 N.W.2d 269 (2021) (in criminal case, proper venue is jurisdictional fact that, in absence of defendant's waiver by requesting change of venue, State has burden of proving beyond a reasonable doubt); *State v. Richter*, 220 Neb. 551, 371 N.W.2d 125 (1985) (factual basis may be determined from inquiry of defendant or county attorney, or by examination of presentence investigation report). The factual basis provided by the State combined with information contained in the PSR provided that the victim's residence and place of employment were located in Sarpy County; that officers determined that Cutaia used a "spoofing application" on his phone to contact the victim's place of employment and located numerous messages on Cutaia's phone talking about where the victim was located during January and February 2020 and, a message sent by Cutaia to his mother that he was parked down the block from the victim's house; that the victim found two tracking devices on her vehicle, one of which was in a car seat, and that "numerous times around the city she would see [Cutaia] following her in an area where she was located" and, when asked about the tracking devices, Cutaia responded that "he was tracking his son and not [the victim]." Officers also listened to Sarpy County jail calls where Cutaia called his son and asked him "to pick a fight with [the victim] so she would get angry enough to hit him so [she would] be arrested for child abuse." During one of the jail calls, Cutaia made a comment about retrieving a camera from the victim's home and setting it up at a neighbor's house "so [Cutaia] could watch [the victim] coming and going." During another jail call, Cutaia called his mother and asked her to call the victim at her work because the victim's "place of employment is not a violation of the Protection Order because it was not mentioned in the Protection Order." Because the victim's residence and place of employment are both located in Sarpy County and many of Cutaia's acts originated in Sarpy County, Sarpy County was the appropriate venue for the stalking charge as it was a county "in which an act is done by the accused in instigating, procuring, promoting, or aiding in the commission of the offense." This assigned error fails.

### 3. MOTION TO WITHDRAW PLEAS

Cutaia's third assigned error is that the district court erred in denying his motion to withdraw his pleas on the basis that his replacement trial counsel "had not been provided material evidence" prior to Cutaia's pleas in this case. Brief for appellant at 13. Cutaia argues that "the State withheld exculpatory evidence from [the] defense by not furnishing his [replacement] trial counsel with a disc containing videos" taken by Cutaia of the October 30, 2019, incident which was the subject of the third degree domestic assault charge. *Id.* at 14. According to Cutaia, the disc also contained law enforcement's interview with the victim, photos of the victim's injuries, and photos of injuries to Cutaia. *Id*. Cutaia acknowledges that the disc had been provided to his prior defense counsel, the Sarpy County Public Defender's Office.

The right to withdraw a plea previously entered is not absolute. *State v. Carr*, 294 Neb. 185, 881 N.W.2d 192 (2016). When a defendant moves to withdraw his or her plea before

sentencing, a court, in its discretion, may sustain the motion for any fair and just reason, provided that such withdrawal would not substantially prejudice the prosecution. *Id*. The defendant has the burden to show the grounds for withdrawal by clear and convincing evidence. *Id*.

Although Cutaia argues that the State withheld evidence from his replacement counsel, he admits that the evidence forming the basis of his request to withdraw his pleas was provided to his previous counsel, the Sarpy County Public Defender's Office. Exhibit 5 confirms that the evidence was provided to the Sarpy County Public Defender's Office on December 19, 2019, which was nearly 8 months prior to Cutaia's August 25, 2020, guilty pleas.

Cutaia also argues that the evidence was newly discovered evidence providing a "fair and just" reason to allow Cutaia to withdraw his pleas. Brief for appellant at 15. We acknowledge that "[n]ewly discovered evidence can be a fair and just reason to withdraw a guilty or no contest plea before sentencing." *State v. Carr*, 294 Neb. at 192, 881 N.W.2d at 197-98. If a defendant moves to withdraw his or her plea because of newly discovered evidence, the court must consider the credibility of the newly discovered evidence. *State v. Carr, supra*. Further, the Nebraska Supreme Court has recognized that matters affecting the credibility of a major witness are material to the defense in a criminal case; consequently, evidence which the defendant might use to impeach an important witness for the State, in addition to evidence which tends to show the defendant's factual innocence, may form the basis for withdrawal. *Id*.

Here, the evidence at issue was not "newly discovered evidence," as the disc had been provided to the defense in December 2019. Further, Cutaia did not present any evidence supporting his claim that the content of the disc was exculpatory in nature or otherwise exonerated him. A viewable copy of the disc was not offered into evidence and the affidavit submitted by Cutaia's attorney stated that "At the time . . . Cutaia entered his plea . . . , I discovered that there was a video taken by . . . Cutaia of the incident which is the cause of action in the Domestic Assault case herein." Videos taken by Cutaia cannot be newly discovered evidence because Cutaia, by virtue of being the person who took the videos, was aware of the video's existence and their content. Cutaia's claim that the district court erred in denying his motion to withdraw his pleas on the basis that his replacement trial counsel "had not been provided material evidence" prior to Cutaia's pleas in this case fails.

### 4. INEFFECTIVE ASSISTANCE OF COUNSEL

Cutaia's final assigned error is that his trial counsel was ineffective for failing to (a) obtain discovery from the public defender's office, (b) investigate Cutaia's cell phone, (c) interview and obtain statements from defense witnesses, (d) object to the factual basis for stalking, and (e) properly calculate time served.

Where, as here, appellate counsel is different from trial counsel, a defendant must raise on direct appeal any issue of ineffective assistance of trial counsel which is known to the defendant or is apparent from the record, or the issue will be procedurally barred on postconviction review. *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019). An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to

be able to recognize whether the claim was brought before the appellate court. *Id*. The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved on direct appeal. *State v. Lowman*, 308 Neb. 482, 954 N.W.2d 905 (2021). The determining factor is whether the record is sufficient to adequately review the question. *Id.* The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.*

### (a) Discovery

Cutaia's first allegation of ineffective assistance of counsel is that his trial counsel failed to obtain a disc containing relevant videos from the public defender's office until after the plea hearing. Cutaia further admits that the discovery had been provided to Cutaia's prior counsel, the Sarpy County public defender's office. He contends that "trial counsel could have arranged a time to retrieve all discovery previously provided, which would have included videos from [Cutaia's] phone of the night of October 30, 2019, the victim's interview with [law enforcement], and photos of both the victim's and [Cutaia's] injuries. By failing to do so, he fell short of the standard by which a criminal attorney of his experience should be held to." Brief for appellant at 21.

Here, an affidavit by Cutaia's replacement trial counsel stated that, in early March 2020, he entered his appearance in these cases and, that same day, filed stipulations for reciprocal discovery. The affidavit further set forth that he did not receive the disc at issue until after the hearing to withdraw Cutaia's plea. The record does not indicate why the disc at issue was not obtained from Cutaia's prior counsel, the Sarpy County public defender's office. The record on direct appeal is insufficient to consider Cutaia's claim of ineffective assistance of trial counsel for counsel's failure to timely obtain the disc at issue here and this issue is preserved.

### (b) Investigation of Cell Phone

Cutaia's second allegation of ineffective assistance of trial counsel is that counsel was deficient in failing to review the contents of Cutaia's phone which he contends was in police custody at the time of the plea hearing. Cutaia alleges that his phone contained exculpatory evidence, including text messages and admissions by the victim, in a file called "Krissy Court." Specifically, Cutaia contends:

> Trial Counsel could have asked for permission from either the district court or the police department to inspect [Cutaia's] phone. According to [Cutaia], had trial counsel inspected his phone, he would have uncovered files which showed:
>
> i. Messages from [the victim] to other women which conveyed an inconsistent version of the events from October 30, 2019;
>
> ii. Security footage from [Cutaia's] cameras showing [the victim] continuing to come over to his house after the protection order was served;
>
> iii. A recording of [the victim] admitting she started the incident that occurred on October 30, 2019.

Brief for appellant at 22.

Here, Cutaia's claim of ineffective assistance of counsel is based upon his allegation that trial counsel did not inspect Cutaia's phone. Because the record on direct appeal does not include the contents of Cutaia's cell phone, the record on appeal is insufficient to resolve this assigned error on direct appeal. Accordingly, this issue is preserved.

(c) Failure to Interview and Obtain Statements From Defense Witnesses

Cutaia's third allegation of ineffective assistance of trial counsel is that counsel "failed to interview witnesses that could have provided assistance in defending [Cutaia] at trial." Brief for appellant at 23. Cutaia identified those individuals and their prospective testimony as follows:

1. Janine Cutaia is [Cutaia's] mother. Janine arrived at [Cutaia's] home shortly after the October 30th incident. She would be able to testify about text messages C.C. ([Cutaia's] son) sent on October 30, 2019. These test messages were about [the victim] being upset and [Cutaia] and Carmine were hiding in the garage. Janine also would be able to testify to [the victim] being upset that night.

2. C.C. is [Cutaia's] son. He would have been able to testify that [the victim] was banging on the garage door on October 30, 2019. That [he and Cutaia] were standing in the garage and that he never saw [Cutaia] physically assault [the victim] that night.

3. Michelle Perez would be able to testify that she has witnessed [the victim] become upset with [Cutaia] which resulted in her knocking his motorcycle helmet off his head. This event occurred in July or August . . . 2019.

4. Thomas Morello is a friend of [Cutaia]. He would be able to testify to an incident that occurred on Memorial Day weekend of 2019. Morello, [the victim], and [Cutaia], were in Solider, (sic) Iowa. While there, [the victim] became upset with [Cutaia] and began attacking him and ripping off parts of his motorcycle.

5. Willy Garcia is a bartender at the Corner Pocket Bar in Omaha, who could testify that [the victim] drank at a bar before picking up [Cutaia's] children.

6. "Mike" (last name unknown) could echo Willy Garcia's testimony.

7. Jacqui Brown knows [the victim]. She was with [Cutaia] when [the victim] would contact him while the protection order was in place. Brown could also testify that she was the one that told [Cutaia] about the second tracking device [the victim] found in her car.

Brief for appellant at 23-24. Cutaia further alleged that "[w]hile trial counsel may have met with some of the witnesses listed above (Janine Cutaia, C.C., Michelle Perez), he did not fully prepare them for trial thus frustrating [Cutaia's] ability to prepare for trial." Brief for appellant at 24.

We note that Cutaia's reply brief raised an allegation that trial counsel was ineffective for failing to interview Carly Fonfara. "[T]he purpose of an appellant's reply brief is to respond to the arguments the appellee has advanced against the errors assigned in the appellant's initial brief and that errors may not be asserted for the first time in a reply brief." *State v. Archie*, 305 Neb. 835, 841, 943 N.W.2d 252, 257 (2020). Since Cutaia raised the issue of counsel's failure to interview Fonfara for the first time in his reply brief, we do not consider the allegation relating to Fonfara.

Here, because Cutaia's allegations regarding the testimony of Janine Cutaia and C.C. directly relate to the October 30, 2019, incident, that evidence is relevant to the charged offense of third degree domestic assault. Cutaia claims that his mother would be able to testify that she was present at his home shortly after the October 2019 incident and would be able to testify regarding text messages sent by Cutaia's son and that the victim was upset. Likewise, Cutaia claims that C.C. would have been able to testify that he and Cutaia were standing in the garage on October 30, that the victim was banging on the garage door, and that he did not see Cutaia physically assault the victim that night. However, the record on direct appeal is insufficient to determine the merits of Cutaia's allegations that trial counsel was ineffective to interview and/or fully prepare Janine Cutaia and C.C. for trial. Accordingly, Cutaia's claims of ineffective assistance of counsel for failing to interview or adequately prepare Janine Cutaia and C.C. for trial is preserved. See *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014) (record on direct appeal of defendant's conviction for first degree sexual assault was insufficient to address merits of defendant's claim that trial counsel was ineffective for failing to interview witnesses who could have provided alternative reason for presence of victim's DNA on defendant's person).

However, we find that Cutaia's allegations of ineffective assistance of counsel for failing to interview or adequately prepare Michelle Perez, Thomas Morello, Willy Garcia, "Mike" (last name unknown), and Jacqui Brown for trial fail. Although Cutaia has made his allegations regarding these witnesses with sufficient particularity, his allegations regarding the testimony that each witness would provide were not relevant to his charged offenses. Had the matter gone to trial, as Cutaia was charged in the amended information, the State would have been required to prove that Cutaia committed the offense of third degree domestic assault by threatening the victim, who was an intimate partner, with imminent bodily injury. See Neb. Rev. Stat. § 28-323(1)(b) (Reissue 2016). Regarding the charge of stalking, as charged as a Class IIIA felony, the State would have been required to prove that Cutaia willfully harassed the victim with the intent to injure, terrify, threaten, or intimidate and was in violation of a valid protection order. See, § 28-311.03 (stalking); Neb. Rev. Stat. § 28-311.04(2)(d) (Cum. Supp. 2020) (stalking, violations, penalties). None of the witnesses and testimony are relevant to the essential elements of the charged offenses.

Cutaia's allegations regarding the testimony of Perez and Morello occurred prior to the October 2019 incident and were irrelevant to the third degree domestic assault charge. Also irrelevant to the third degree domestic assault charge or the stalking charge were Perez's allegations that Garcia and "Mike" would testify that the victim drank at a bar. Finally, the testimony Cutaia alleges he would have sought from Brown that the victim contacted Cutaia when the protection order was in place and that she notified Cutaia about the victim finding the second tracking device in her car, is irrelevant to either offense of third degree domestic assault or stalking.

We conclude that Cutaia's allegations do not establish deficient conduct by his trial counsel, but even if they had done so, he would be unable to show any prejudice. Because the witnesses and their alleged testimony were not relevant considerations for the purposes of the charged offenses, even had trial counsel conducted interviews of those witnesses, those interviews would not have produced any evidence to create a reasonable probability that Cutaia would have insisted on proceeding to trial rather than entering a plea. The claim of ineffective assistance of counsel as to trial counsel's alleged failure to interview or adequately prepare Michelle Perez,

Thomas Morello, Willy Garcia, "Mike" (last name unknown), and Jacqui Brown fails, while trial counsel's alleged ineffectiveness for failure to interview or adequately prepare Janine Cutaia and C.C. is preserved.

### (d) Failure to Object to Factual Basis for Stalking

Cutaia's fourth allegation regarding ineffective assistance of trial counsel is that counsel was deficient in failing to object to the factual basis for the stalking charge. He contends that "there is nothing the factual basis for [the stalking charge] that establishes clear locations for where these events occurred." Brief for appellant at 25. Having previously rejected Cutaia's allegation that the factual basis for the stalking charge failed to establish venue, his trial counsel was not ineffective for failing to object to the factual basis for stalking. Defense counsel is not ineffective for failing to raise an argument that has no merit. *State v. Martinez*, 302 Neb. 526, 924 N.W.2d 295 (2019). This assigned error fails.

### (e) Calculation of Time Served

Cutaia's fifth allegation of ineffective assistance of counsel is that trial counsel's request for 134 days' credit for time served was an incorrect calculation of his time served. He alleges that he was entitled to 142 days' credit for time served.

Neb. Rev. Stat. § 83-1,106 (Reissue 2014) provides, in part, that an offender is to be given credit for time spent in custody as a result of a criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. Under our statutes, an offender shall be given credit for time served as a result of the charges that led to the sentences; however, presentence credit is applied only once. *State v. Banes*, 268 Neb. 805, 688 N.W.2d 594 (2004). Whether a defendant is entitled to credit for time served and in what amount are questions of law, subject to appellate review independent of the lower court. *State v. McCain*, 29 Neb. App. 981, 961 N.W.2d 576 (2021).

In *State v. Iddings*, 304 Neb. 759, 936 N.W.2d 747 (2020), the Nebraska Supreme Court determined that the defendant's argument that trial counsel was ineffective for failing to request additional credit for time served, and made specific allegations regarding time served for which defendant did not receive credit, was not subject to review on direct appeal where there was no PSR and necessary facts to conduct analysis were not contained in record.

Here, Cutaia alleges that he was entitled to 142 days of credit for time served. We note that the presentence investigation report affirmatively indicates that Cutaia was in jail from February 24, 2020, until July 6, 2020, for a total of 134 days, which was the amount of credit that was requested by trial counsel and was granted by the trial court. However, because the record does not contain any allegations to support Cutaia's claim that his credit for time served was incorrect, we find that the record on direct appeal is insufficient to address this allegation of insufficiency of trial counsel.

### VI. CONCLUSION

Having considered Cutaia's assigned errors, we reject his claims that the district court: erred in granting the State's motion to consolidate, committed plain error in finding that the factual

basis provided by the State for the stalking charge established venue in Sarpy County, and erred in denying his motion to withdraw his pleas. Regarding Cutaia's allegations concerning ineffective assistance of his trial counsel, we reject his claims that trial counsel was ineffective for failing to object to the factual basis for stalking, and failing to interview and adequately prepare for trial defense witnesses Michelle Perez, Thomas Morello, Willy Garcia, "Mike" (last name unknown), and Jacqui Brown.

We find that the evidence is insufficient on direct appeal to address Cutaia's claims that trial counsel was ineffective for failing to obtain discovery from the public defender's office, failing to inspect Cutaia's cell phone, failing to interview defense witnesses Janine Cutaia and C.C. and adequately prepare them for trial, and properly calculate time served. These allegations are preserved for postconviction review.

Finally, we find that Cutaia's allegation that trial counsel was ineffective for failing to interview Fontana, which claim was raised for the first time in his reply brief, was not properly raised or preserved for review.

AFFIRMED.